[Cite as *State v. Steward*, 2014-Ohio-5632.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                   CASE NO. 13-14-11

     v.

RYAN D. STEWARD,                         O P I N I O N

     DEFENDANT-APPELLANT.


Appeal from Seneca County Common Pleas Court
Trial Court No. 14 CR 0047

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

Date of Decision: December 22, 2014


APPEARANCES:

    *James W. Fruth* for Appellant

    *Derek W. DeVine and Brian O. Boos* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant Ryan D. Steward ("Steward") appeals the May 9, 2014 judgment of the Seneca County Common Pleas Court sentencing Steward to 30 months in prison after Steward was found guilty in a jury trial of Cultivation of Marihuana in an amount exceeding 1,000 grams in violation of R.C. 2925.04(A),(C)(5)(d), a felony of the third degree, Trafficking Marihuana in an amount exceeding 200 grams in violation of R.C. 2925.03(A)(2),(C)(3)(c), a felony of the fourth degree, and Possessing Criminal Tools in violation of R.C. 2923.24(A),(C), a felony of the fifth degree.

{¶2} The facts relevant to this appeal are as follows. On February 20, 2014, Steward was indicted for Cultivation of Marihuana in an amount exceeding 1,000 grams in violation of R.C. 2925.04(A),(C)(5)(d), a felony of the third degree, Trafficking Marihuana in an amount exceeding 200 grams in violation of R.C. 2925.03(A)(2),(C)(3)(c), a felony of the fourth degree, and Possessing Criminal Tools in violation of R.C. 2923.24(A),(C), a felony of the fifth degree.[1] (Doc. 1).

{¶3} On March 6, 2014, Steward was arraigned and pled not guilty to the charges against him.

---

[1] The Cultivation and Trafficking charges also contained specifications that certain property subject was subject to forfeiture as proceeds derived from the commission of the offenses.

{¶4} The case proceeded to a jury trial, which was held April 28-29, 2014. At trial the State first called Detective Gabriel Wedge, who worked for the Seneca County Drug Task Force, METRICH Enforcement Unit. (Tr. at 108). Detective Wedge testified that this case began when METRICH received information that there was a "grow operation" at 129 Hale Drive in Fostoria, a residence leased by a man named Brandon Navarro. (Tr. at 110). Detective Wedge testified after receiving the information, METRICH began conducting surveillance on the residence. (Tr. at 110).

{¶5} Detective Wedge testified that along with conducting visual surveillance, he also walked the railroad tracks behind the house to get the registration of a truck that was parked there. (Tr. at 111). Detective Wedge testified that he could smell a strong odor of unburnt marihuana coming from the residence by simply walking past it. (Tr. at 111). Detective Wedge also testified that while conducting surveillance on the residence, he observed Steward being dropped off at the residence. (Tr. at 155).

{¶6} Detective Wedge testified that his unit then obtained a warrant to use a "thermal imager," which detects differences in heat signatures in a home and learned that there were abnormal heat signatures coming from the basement at the Hale Drive residence. (Tr. at 112).

{¶7} Detective Wedge testified that he then obtained a search warrant to search the Hale Drive residence, and that the search was conducted on July 11, 2013. (Tr. at 112-113). Detective Wedge testified that when the residence was searched, two people were on the premises mowing the lawn, and they were detained, but the residence was otherwise empty. (Tr. at 115). Detective Wedge testified that when he entered the residence, there was a very strong odor of marihuana such that anyone who was living there would have definitely smelled it. (Tr. at 115).

{¶8} Detective Wedge testified that during the search a mason jar containing marihuana was found in the living room, and digital scales with marihuana residue was found on a folding table in the dining room. (Tr. at 122-123). Detective Wedge testified that in the basement of the residence there was a grow operation consisting of heat lamps, temperature controls, soil, fertilizer, ventilation, chemicals for growth, seeds, and over 100 marihuana plants. (Tr. at 125, 150). Detective Wedge also testified that there were High Times and Weed World magazines in the bathroom of the residence with articles on cultivation of marihuana, as well as a book on how to grow marihuana indoors. (Tr. at 129-130). Detective Wedge testified that there were plastic baggies of harvested marihuana located in the upstairs bedroom, including a large freezer bag full of marihuana. (Tr. at 131). Detective Wedge's testimony regarding what was found

in the residence was corroborated by video that was taken of the interior of the residence, and various pictures, all of which was introduced into evidence. (State's Ex. 10).

{¶9} Detective Wedge testified that Steward's clothes were located in one of the bedrooms on the first floor of the residence along with an air mattress. (Tr. at 132). Detective Wedge also testified that Steward's social security card, his "Directions" card, an ID card, a bus ticket to Texas, and a work shirt with Steward's name on it for the auto-part manufacturing plant where Steward worked were all located in the residence along with other piles of Steward's clothing. (*Id.*) Detective Wedge testified that the folding table with the digital scale was ten feet from Steward's bedroom. (Tr. at 132-133).

{¶10} Detective Wedge testified that a cell phone was recovered on the end table in the front room of the residence. (Tr. at 138). Detective Wedge testified that the phone was searched, and messages from the phone were shown at trial. (*Id.*) Three messages specifically identified Steward on the phone, and other messages on the phone contained conversations regarding selling marihuana. (Tr. at 141); (State's Ex. 4). Detective Wedge testified that neither of the home's other two occupants, the renter listed on the lease, Brandon Navarro, or another known associate, Logan Cole, was named or mentioned in the phone. (Tr. at 142); (Tr. at 173).

{¶11} The State next called Megan Koentop, a Forensic Scientist specializing in Drug Chemistry who worked for BCI. Koentop testified that she received substances for testing and that the substances she received for testing were, in fact, marihuana. (Tr. at 182). Koentop identified various exhibits and the amount of marihuana contained in each one. One of the eleven items she tested alone contained over 1,000 grams of marihuana, with several others containing over three hundred grams each. (Tr. at 188). Koentop testified that there are roughly 450 grams in a pound, and that altogether, by her estimation, there was roughly 5.7 pounds of marihuana. (Tr. at 189-190).

{¶12} The last witness called by the State was Detective Shawn Valley, who was with the Tiffin Police Department. (Tr. at 195). Detective Valley testified that he assisted in the execution of the search warrant on the Hale Drive residence and that he transported the suspected marihuana after the search of the Hale Drive residence to the BCI crime lab where Koentop subsequently tested it. (Tr. at 195).

{¶13} At the conclusion of the State's case, Steward made a Crim.R. 29 motion for acquittal, which was overruled by the trial court. Steward then presented his case-in-chief, calling Michelle Hammond to the stand. Hammond testified that Steward was her on-again, off-again boyfriend. (Tr. at 219). Hammond testified that Steward lived with her, and typically stayed with her 5-6

nights a week.  (Tr. at 219).  Steward testified that the other nights Steward stayed with "Mike" or "Brandon" (indicating Brandon Navarro, who was on the lease of the Hale Drive residence).  (Tr. at 219).

{¶14} Hammond testified that Steward had a job at an auto-part manufacturer and that she did Steward's laundry.  (Tr. at 222-223).  Hammond testified that Steward would stay with her when they were together, but inevitably they would fight and she would throw him out until they reconciled.  (Tr. at 219). Hammond also testified that Steward did not have his own cell phone and she had to get in touch with him on multiple phones in the past.  (Tr. at 221).

{¶15} Steward then took the stand in his own defense and testified that he was not involved in growing, cultivating, or selling marihuana. (Tr. at 267). Steward testified that he did not live at the Hale Drive residence, and that he only stayed there occasionally when Hammond threw him out and he had no place else to go.  (Tr. at 262).

{¶16} Steward testified that he had not stayed at the Hale Drive residence in the couple of days prior to the search warrant being executed, and that he was unaware of any operation going on in the residence.  (Tr. at 264).  Steward testified that he had never seen a scale on the folding table and that he had never seen a plant in the residence as he had no reason to go down in the basement.  (Tr. at 264-265).  Steward testified he did not recall seeing the magazines on

cultivation in the bathroom. (*Id.*) Steward also testified that he did not own a cell phone and that he only used the phone at the Hale Drive residence a couple of times. (Tr. at 269).

{¶17} On cross-examination Steward first testified that he never smelled marihuana in the home, but later clarified stating that Brandon Navarro smoked marihuana so he only associated any scent of marihuana in the residence with that. (Tr. at 280). Steward testified that he did not know Navarro well, and did not know of Navarro's prior convictions, despite occasionally staying with him and traveling to Texas with him. (Tr. at 277).

{¶18} Steward again admitted using the cell phone that had his name mentioned in it multiple times, but claimed the phone was not his and he only borrowed it. (Tr. 282-283). Steward testified that his presence in the Hale Drive residence and the presence of his name in the cell phone used to conduct drug transactions was merely a coincidence. (Tr. at 283). Steward also admitted to three prior felony convictions in Florida, one for dealing in stolen property in 2007, one for purchasing cocaine in 2008, and one for possession of cocaine in 2008. (Tr. at 284).

{¶19} After Steward finished testifying, he rested his case. The State then recalled Detective Wedge on rebuttal, who testified that the jury could look through the phone in question, which was admitted into evidence, and that the

phone only mentioned Steward by name, and never mentioned either of the residence's other occupants.

**{¶20}** At the conclusion of the testimony, the parties gave their closing arguments and the court provided jury instructions. The case was then submitted to the jury. After deliberations, the jury found Steward guilty of Cultivation of Marihuana in an amount exceeding 1,000 grams in violation of R.C. 2925.04(A),(C)(5)(d), a felony of the third degree, Trafficking Marihuana in an amount exceeding 200 grams in violation of R.C. 2925.03(A)(2),(C)(3)(c), a felony of the fourth degree, and Possessing Criminal Tools in violation of R.C. 2923.24(A),(C), a felony of the fifth degree.

**{¶21}** On May 7, 2014 a sentencing hearing was held. The trial court ultimately sentenced Steward to serve 30 months in prison on the Cultivation conviction, 14 months in prison on the Trafficking conviction, and 8 months in prison on the Possession of Criminal Tools conviction. The sentences were ordered to be served concurrently. An entry memorializing this sentence was filed May 9, 2014.

**{¶22}** It is from this judgment that Steward appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED IN PERMITTING EVIDENCE CONCERNING APPELLANT'S PRIOR FELONY RECORD TO BE INTRODUCED TO THE JURY.**

*First Assignment of Error*

**{¶23}** In Steward's first assignment of error, he contends that his convictions were against the manifest weight of the evidence. Specifically, Steward argues that no contraband was found in Steward's room in the Hale Drive residence during the execution of the search warrant, that the cell phone found in the residence was not his, and that the State presented no evidence tying Steward to the actual cultivation of marihuana.

**{¶24}** An appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387. Because reversals based upon the manifest weight are for exceptional circumstances, as the Ohio Supreme Court held in *Thompkins,* Section 3(B)(3), Article IV of the Ohio Constitution

Case No. 13-14-11

mandates the unanimous concurrence of all three judges on the reviewing panel to reverse a defendant's conviction. *Thompkins* at 389.

{¶25} We will review each of Steward's three convictions in turn.

*Trafficking in Marihuana*

{¶26} In this case Steward was convicted of Trafficking in Marihuana in an amount exceeding 200 grams in violation of R.C. 2925.03(A)(2),(C)(3)(c), which reads,

**(A) No person shall knowingly * * ***

**\* \* \***

**(2) * * * [P]repare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person.**

**\* \* \***

**(B) Whoever violates division (A) of this section is guilty of * * ***

**\* \* \***

**(3) If the drug involved in the violation is marihuana * * ***

**\* \* \***

**(c) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds two hundred grams but is less than one thousand grams, trafficking in marihuana is a felony of the fourth degree * * * [.]**

-11-

{¶27} On appeal, Steward argues that his Trafficking conviction was against the manifest weight of the evidence because he claims that the cell phone containing messages regarding marihuana sales was not his. We disagree.

{¶28} Despite Steward's arguments, the State presented evidence of text messages addressed to, and sent by, Steward that were contained in a cell phone that was found in the living room of the residence Steward occasionally stayed in. The phone contained messages identifying Steward and other messages relating to the sale of marihuana but which did not identify Steward by name.

{¶29} Specifically, the phone in question contained three texts all identifying Steward as the user of the phone, two incoming and one outgoing. The two incoming messages read, "[Steward]…answer me please" and "[Steward] its [sic] your father call me[.]" (State's Ex. 4). The outgoing message contained a fragment and read, "Im sorry im [Steward]. And I have a friend in jail that needs to be * * * [.]"[2] Detective Wedge testified that unlike Steward, neither Navarro, the renter of the Hale Drive residence, nor Cole, a known associate, were named or mentioned anywhere in the phone messages.

{¶30} The cell phone in question also contained messages regarding the sale of marihuana. One such incoming message read, "Even a ten bag would be fine[.]" (State's Ex. 4). Detective Wedge testified that a "bag" referred to a bag

---

[2] The testimony indicated that Brandon Navarro needed to be bailed out of jail.

of marihuana. Another incoming message read, "Where's my bag at[?]" (*Id.*) Another similar one followed, asking where the "20 bag" was. (*Id.*) An outgoing message from the phone replied, "I got u this week Forsure[.]" Detective Wedge testified that these were evidence of drug transactions.

{¶31} On the basis of the evidence presented, we cannot find that the jury clearly lost its way as the jury had access to the phone itself and could see all of the messages, which tied Steward to the phone and by reasonable inference therefrom, to the sale of marihuana. Accordingly, Steward's argument that his conviction for Trafficking was against the manifest weight of the evidence is not well taken and his assignment of error is overruled as to this issue.

*Cultivation of Marihuana*

{¶32} Steward next contends that his conviction for Cultivation of Marihuana in an amount exceeding 1,000 grams was against the weight of the evidence. We agree.

{¶33} Cultivation of Marihuana is prohibited by R.C. 2925.04(A),(C)(5)(d), which reads,

> **(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.**
>
> \* \* \*

**(C)(1) Whoever commits a violation of division (A) of this section * * * that involves marihuana is guilty of illegal cultivation of marihuana.**

**(5) If the drug involved in the violation is marihuana, the penalty for the offense shall be determined as follows:**

**(d) If the amount of marihuana involved equals or exceeds one thousand grams but is less than five thousand grams, illegal cultivation of marihuana is a felony of the third degree * * * [.]**

{¶34} To convict Steward of cultivation, the State presented evidence that Steward was observed being dropped off at the Hale Drive residence, that his possessions were in the residence, and that he stayed there occasionally in a room that was his own containing an air mattress and his clothing. The State presented evidence that the odor of marihuana throughout the house was "very strong" and that anyone who stayed there would have been aware of it. The State also presented evidence that there were various magazines and a book on the cultivation of marihuana in the home, and that a scale to weigh marihuana was ten feet from Steward's room on a folding table.

{¶35} The State also presented evidence that the residence contained a variety of tools used for the cultivation of marihuana, as testified by Detective Wedge and identified in the video/pictures of the residence. These tools included an added ventilation system in the basement, grow lamps, temperature controls, soil, chemicals, pruning shears, baggies, and scales. One hundred twenty-two plants were found in the basement of the residence, and a total of approximately

5.7 pounds of marihuana was found, in excess of 2,000 grams, all indicative of a growth and cultivation operation.

{¶36} Thus the jury heard testimony and was presented evidence that Steward, if not regularly, at least irregularly stayed at the Hale Drive residence, which contained a grow operation. Steward's items were in the home and he had his own bedroom with digital scales just feet away from his bedroom door. His messages were also in a cell phone, which contained several texts related to the sale of marihuana. The State thus presented evidence that made it difficult to believe that Steward was staying in the residence oblivious of the grow operation. Moreover, as already noted, these factors taken together clearly permit reasonable inferences that Steward was engaged in trafficking. However, the record contains no evidence that Steward was actually involved in the *cultivation* of the marihuana itself.

{¶37} For example, there was no evidence Steward ever went into the basement where the grow operation was contained. There was no evidence of Steward caring for the plants, or cultivating them once they had grown. Moreover, the only packaged marihuana that was found in the residence was found in Brandon Navarro's upstairs bedroom, which contained a padlock on the outside preventing Steward from having access to it. No marihuana or criminal tools were found located among Steward's scant possessions inside the residence.

**{¶38}** As a result, it is our determination that through the use of inferences derived exclusively from his frequent presence in the home, his association with Brandon Navarro, the scales and the cell phone, the jury could reasonably conclude beyond a reasonable doubt that Steward was engaged in trafficking the marihuana and perhaps that Steward was fully aware of the cultivation operation. However, without relying on further multiple inferences upon inferences from those same facts, it is also our determination that there was simply nothing presented by the State from which a jury could properly conclude beyond a reasonable doubt that Steward engaged in the cultivation aspect of this criminal enterprise, rather than merely selling the finished product. Therefore, we have no choice but to sustain Steward's argument that his conviction for Cultivation of Marihuana was against the weight of the evidence. His argument on this issue is thus well-taken, and his assignment of error is sustained as to this conviction.

*Possessing Criminal Tools*

**{¶39}** Steward was also convicted of Possessing Criminal Tools in violation of R.C. 2923.24(A),(C), which reads,

> **(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.**
>
> **\* \* \***
>
> **(B) \* \* \* If the circumstances indicate that the substance, device, instrument, or article involved in the offense was**

**intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree.**

**{¶40}** In this case, when the State indicted Steward for Possessing Criminal Tools, the criminal tools were specified in the indictment. The indictment reads, in pertinent part,

> **On or about the 11th day of July, 2013, in Seneca County, Ohio, RYAN D. STEWARD did possess, or have under his control, any substance, device, instrument, or article, namely a digital scale, heaters, fans, lighting systems, water pump, generators, and CO2 tank, with the purpose to use them criminally, and the circumstances indicate that the tools were intended for use in the commission of a felony.**

(Doc. 1). The jury instructions similarly identified the same items that were claimed to be used by Steward as criminal tools.

> **The Defendant is charged with possessing criminal tools. Before you can find the Defendant guilty, you must find beyond a reasonable doubt * * * the Defendant did possess or have under his control any device, instrument, or article, with purpose of using it criminally, namely a digital scale, heaters, fans, lighting systems, water pump, generators, CO2 tank, with the purpose to use them criminally, and the circumstances indicate the tools were * * * intended for use in the commission of a felony.**

(Tr. at 313).

**{¶41}** Thus in contrast to the general wording of the statute which might have included the cell phone, for example, the indictment in this case was limited to a number of specifically listed items, and the jury was instructed that to find Steward guilty of possessing criminal tools, he had to possess one of the listed

items.   All of the listed items, except for the digital scale, pertained to the cultivation of marihuana.  We have already found that Steward's conviction for cultivation was against the manifest weight of the evidence, and we similarly find here that there was simply no evidence tying Steward to possession of the "heaters, fans, lighting systems, water pump, generators, [or the] CO2 tank" that were involved in cultivation.  This is particularly true when Steward was not the renter of the Hale Drive residence and he did not regularly reside there.  There was simply no evidence that he was involved in personally using these items to cultivate marihuana.

{¶42} The digital scale is the item that Steward could *possibly* have possessed and used criminally in the trafficking offense.[3]  The digital scale was found on a folding table ten feet from Steward's bedroom in the Hale Drive residence containing marihuana residue.  In order to convict Steward of possessing the digital scale, the jury would have to make an inference that Steward, who was already by inference only based on the cell phone text messages, tied to the trafficking in marihuana, was using the digital scale to measure the appropriate amount of marihuana discussed in the text message transactions.

{¶43} However, in the text messages, there was never any mention of actual weight, only dollar amounts.  Therefore, it cannot be clearly evident that

---

[3] We would note that had the State listed the cell phone as a criminal tool the jury could potentially have found it to be a criminal tool.

Steward used or possessed the digital scale for trafficking marihuana without improperly making multiple inferences on inferences. Accordingly, Steward's argument that his conviction for possession of criminal tools was against the weight of the evidence is well-taken and his assignment of error is sustained on this issue.

{¶44} Steward's first assignment of error is thus overruled in part as to his Trafficking conviction and sustained in part as to his Cultivation and Possession of Criminal Tools convictions.

*Second Assignment of Error*

{¶45} In his second assignment of error, Steward argues that the trial court erred by permitting testimony of Steward's prior felony convictions in Florida from 2007 and 2008. Specifically, Steward argues that the prior convictions were "inflammatory," suggesting that the probative value was substantially outweighed by the prejudicial effect, and that the jury was misled and relied upon the prior convictions.

{¶46} Evidence Rule 609 governs the inclusion of evidence of prior convictions to impeach a witness. It reads, in pertinent part,

**(A) General rule**

**For the purpose of attacking the credibility of a witness:**

\* \* \*

**(2) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.**

**(3) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.**

Evid.R. 609(A).

{¶47} "A trial court is afforded broad discretion in determining the extent to which such evidence may be admitted under Evid.R. 609[,]" therefore a trial court's decision to permit evidence under Evid.R. 609 will be reviewed for an abuse of discretion. *State v. Brown*, 100 Ohio St.3d 51, 58, 2003-Ohio-5059, ¶ 27. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶48} In this case it is not disputed that Steward had been convicted of three prior felonies. Prior to Steward taking the stand and testifying at trial, Steward objected to the inclusion of the prior felonies as being more prejudicial than probative. Outside of the presence of the jury, the trial court heard lengthy arguments as to the prior convictions, and then made the following ruling.

**THE COURT:** * * * **The Court has reviewed this issue. Has reviewed Evidence Rule 609.** * * *

**[T]he court has looked at the nature of the crime[s]. Has looked at the recency of the prior convictions. Has looked at the similarity between the crime[s] for which there was a prior conviction and the crime[s] charged in this case. Court has looked at the importance of the Defendant's testimony and has considered the centrality of the credibility issue, which is paramount in this case as to the issues involved in this case.**

**So therefore, after review of all these factors * * * in making the determination, the Court is of the opinion that the unfair prejudice or misleading the jury is, does not outweigh the probative value and; therefore, the Court is going to allow limited cross-examination of the Defendant on the issues of prior impeachment testimony. And the Court will give a limiting instruction as proposed by [defense counsel].**

(Tr. at 250-251).

**{¶49}** When the trial resumed, Steward proceeded to testify, and the following testimony was elicited while Steward was on the stand on cross-examination regarding his prior felony convictions.

**Q[Prosecutor]: Okay. Mr. Steward, you've been convicted of felony crimes of dishonesty, correct?**

**A: Yes, sir.**

**Q: In fact, you were convicted in 2007 in the State of Florida dealing in stolen property, correct?**

**A: That is correct.**

**Q: In 2008 you were convicted of purchasing cocaine, correct?**

**A: That is correct.**

-21-

**Q: In 2008, you were also convicted of possession of cocaine, correct?**

**A: That is correct.**

**Q: And those are all felony convictions?**

**A: That is correct.**

(Tr. at 284).

{¶50} After this line of questioning, the State concluded its cross-examination of Steward. The trial court then immediately gave a limiting instruction regarding the prior conviction testimony.

{¶51} On appeal, Steward contends that because two of his prior convictions were drug-related, the jury was misled and likely based its decision on Steward having prior convictions. First, there is no indication that the jury was misled or improperly decided this case based solely on the prior convictions. In fact, there was ample evidence implicating Steward in the trafficking charge as discussed in the previous assignment of error. Second, the nature of the crimes in this case were different from Steward's prior convictions, as purchasing and possessing cocaine are different than cultivating and trafficking in marihuana, as one is for use and consumption and the other is an operation or criminal enterprise for monetary gain, which is usually regarded as having a greater impact on society as a whole. Third, as the trial court stated in making its decision, Steward's

credibility was a central issue in this case, particularly since he decided to take the witness stand. As Steward's version of events was different than that laid out by the State, his credibility became a central determination for the jury, increasing the probative value of the prior convictions for impeachment purposes. *See State v. Brown,* 100 Ohio St.3d 51, 58, 2003-Ohio-5059, ¶ 27.

**{¶52}** Therefore, for all of these reasons, we cannot find that the trial court abused its discretion in permitting testimony regarding Steward's prior convictions. Moreover, this is particularly true in light of the fact that the trial court gave a limiting instruction regarding the prior convictions immediately after the testimony regarding the prior convictions was heard, and the jury is presumed to follow the court's instructions. Accordingly, Steward's second assignment of error is overruled.

**{¶53}** For the foregoing reasons Steward's first assignment of error is sustained in part and overruled in part, and his second assignment of error is overruled. Steward's convictions for Cultivation of Marihuana and Possessing Criminal Tools are hereby reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WILLAMOWSKI, P.J., concurs.**
**/jlr**

Case No. 13-14-11

**ROGERS, J. concurring in part and dissenting in part.**

{¶54} I concur with the majority's disposition of the offenses of cultivating and possession of criminal tools. I respectfully dissent from the disposition of the offense of trafficking, and with the comment in the third footnote.

{¶55} To affirm the trafficking conviction, the majority concludes that a cell phone found in the search of the Hale Drive residence in fact belonged to Steward, that all messages on that cell phone were to or from Steward, that some messages related to trafficking in marihuana, and from all this, that a reasonable juror could conclude that Steward was trafficking in marihuana.

{¶56} The problem with this logic is that it requires inference upon inference, or stacking of inferences, which is not permitted in Ohio law. "A trier of fact may not draw '[a]n inference based * * * entirely upon another inference, unsupported by *any additional fact* or another inference from other facts[.]' " (Emphasis added.) *State v. Cowans*, 87 Ohio St.3d 68, 78 (1999), quoting *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329 (1955), paragraph one of the syllabus. As the Ohio Supreme Court has noted:

> "For the purpose of supporting a proposition, it is not permissible to draw an inference from a deduction which is itself purely speculative and unsupported by an established fact. Where an inference not supported by or drawn from a proven or known fact is indulged, and is then used as a basis for another inference, neither inference has probative value. Such a process may be described as drawing an inference from an inference, and is not allowable."

-24-

*Hurt* at *332,* quoting *Indian Creek Coal & Mining Co. v. Calvert*, 68 Ind. App.474, 120 N.E. 709, 709-710 (1918).

**{¶57}** The majority has inferred that because three messages refer to Steward, and no other message refer to anyone else in the house by name, that the cell phone was his. This inference comes from two inbound text messages asking for Steward. This is not conclusive evidence that the phone was Steward's, as the other evidence in the record indicates that Steward had no cell phone and typically borrowed cell phones from others. Indeed, that the two inbound messages asked specifically for Steward indicate that the sender wanted to make sure that the correct person received the message. This indicates that others had access to the phone.

**{¶58}** To further support its inference that Steward owned the phone, the majority relies on a fragment of a text message that says " 'Im sorry im Steward * * *.' " Majority Opin., ¶ 29. There is no identifying information as to when this text was sent or the surrounding messages that would provide any context for either apologizing or identifying himself. It appears that it was sent in response to a text from a contact only identified as "K" which asked "First who is this? Second Jason who?" State's Exhibit 4. If Steward owned the phone, he would not have had to identify himself to the person he was texting. That the person he was texting did not know who he was is evidence that Steward was not the one that

owned the phone. These bits and pieces of a few text messages do not support the inference that Steward owned the phone. Next they infer that because the cell phone is his, all messages on the cell phone are his. Therefore, they infer that the messages that appear to be related to marihuana are his. And finally they infer that because a cell phone which they infer is his, contains messages which they have inferred are his, which they infer are related to trafficking in marihuana, that Steward is trafficking in marihuana. Meanwhile, the majority has accepted the fact that the digital scales, located near the room where Steward occasionally stayed, was not proven to be the Steward's, and further conveniently ignores the fact that "the only packaged marihuana was found in Brandon Navarro's upstairs bedroom, which contained a padlock on the outside preventing Steward from having access to it." Majority Opin., ¶ 37. To use the cell phone to convict Steward, the majority impermissibly heaped inference upon inference.

{¶59} Even if the majority could take all of these inferences from the cell phone, it is not enough to convict Steward. Steward was charged with trafficking marihuana in violation of R.C. 2925.03(A)(2), which makes it illegal to "[p]repare for distribution, or distribute a controlled substance * * *." R.C. 2925.03(A)(1), on the other hand, makes it illegal to "*sell or offer to sell* a controlled substance * * *." (Emphasis added.) Under R.C. 2925.01, the definitions of the terms "distribute" and "sale" are the same as those found in R.C. 3719.01. Under R.C.

3719.01(F), distribute "means to deal in, ship, transport, or deliver *but does not include * * * dispensing* a drug." (Emphasis added.) " 'Dispense' means to *sell * * *.*" (Emphasis added.) R.C. 3719.01(E). " 'Sale' includes delivery, barter, exchange, transfer, or gift or offer thereof * * *." R.C. 3719.01(AA). With the differentiation between selling and distributing in R.C. 2925.03 (A)(1) and (2), coupled with the definitions in R.C. 3719.01, it seems clear that distribution does not include selling the drug. Insofar as the texts from the cell phone may prove that Steward offered to sell or even sold drugs, they do not prove that he *distributed* the drugs or prepared them for distribution.

{¶60} Nothing prevented the State from charging Steward under R.C. 2925.03(A)(1), where it need only prove that he sold the marihuana. However, the State chose to charge Steward with trafficking under R.C. 2925.03(A)(2) and thus was required to prove he distributed the drug. The cell phone text messages are not enough to prove distribution.

{¶61} Even if the majority can draw all of the inferences from the cell phone to prove that Steward distributed marihuana, none of the texts refer to an amount that "exceeds two hundred grams but is less than one thousand grams * * *." R.C. 2925.03(C)(3)(c). As discussed, Steward had no access to the vast amounts of marihuana that was found in Navarro's bedroom, which easily exceeded two hundred grams, because it was padlocked. The only marihuana that

Steward had any access to was found in a jar near the scales and cell phone. The amount in this jar was "9.5 grams – found to contain Marihuana (Cannabis)." States Exhibit 9. This is clearly less than two hundred grams.

{¶62} The majority relies exclusively on the cell phone to affirm Steward's convictions. However, the cell phone, standing alone, is not enough to draw all the inferences necessary to convict Steward of trafficking under R.C. 2925.03(A)(2) and (C)(3)(c). I would, therefore, sustain Steward's first assignment of error as to trafficking, as well as the other two offenses, and reverse all three convictions.